J-S50034-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.J.-J.D., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: V.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 596 EDA 2017 |

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001218-2016,
CP-51-DP-0001911-2014

| | | |
|---|---|---|
| IN THE INTEREST OF: L.S.A.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: V.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 603 EDA 2017 |

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001220-2016,
CP-51-DP-0001912-2014

IN THE INTEREST OF: S.-A.V.C., A    :    IN THE SUPERIOR COURT OF
MINOR                                 :         PENNSYLVANIA
                                          :
                                          :
APPEAL OF: V.C., MOTHER         : 
                                          :
                                          :
                                          :
                                          :     No. 605 EDA 2017

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s):  CP-51-0001295-2012,
CP-51-AP-0001219-2016

BEFORE:   PANELLA, MOULTON, and RANSOM, JJ.

MEMORANDUM BY RANSOM, J.:           **FILED OCTOBER 03, 2017**

V.C. ("Mother") appeals from the decrees dated and entered on January 19, 2017, granting the petitions filed by the Philadelphia County Department of Human Services ("DHS" or the "Agency"), to involuntarily terminate her parental rights to her dependent children, S.C., a/k/a S.-A.V.C. (a female born in June of 2011) and L.C., a/k/a L.S.A.C. (a female born in January of 2014), pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b). Mother also appeals the orders dated and entered on January 19, 2017, granting the petition filed by DHS to involuntarily terminate her parental rights to her dependent male child, D.J.-J.D., Jr., a/k/a D.D. (born in January 2013),

- 2 -

whose biological father, D.D., is deceased, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  We affirm.

The trial court set forth the factual background of Mother's appeal as follows.

\* \* \*

Prior to the birth of the Children, on October 23, 2010, the family became known to the Department of Human Services ("DHS") through a Child Protective Services ("CPS") report alleging Father caused the death of the Children's sibling, [S.][2].  An autopsy of [S.] revealed evidence of pre-existing trauma and injuries.  On October 25, 2010, DHS learned that the Philadelphia Police Department's Homicide Unit had begun investigating [S.'s] death.  On October 25, 2010, DHS met with Mother and Father in their home and interviewed them separately.  Mother stated that she was at work when [S.] died.  Father stated that he found [S.] in the shower in a distressed physical condition.  DHS determined that Father's account was not credible.

On October 26, 2010, the Medical Examiner's Office informed DHS that [S.'s] death was deemed a homicide and the cause of death was multiple blunt impact injuries.[3]  The same day DHS obtained an Order for Protective Custody ("OPC") for two other children [Ny.] and [Sy.], the biological children of Mother but not Father.  [Ny.] and [Sy.] were in the care of Mother and Father when [S.] died.

On June [ ], 2011, Mother gave birth to SC, the biological daughter of Father[,] E.D.  On July 31, 2012, the Honorable Jonathan Irvine

---

[1] We refer to S.C., L.C., and D.D. collectively as the "Children".  In decrees dated and entered on January 9, 2017, the trial court granted the petitions to involuntarily terminate the parental rights of E.D., the biological father of L.C. and S.C. ("Father"), to L.C. and S.C.  Father has filed an appeal from the termination of his parental rights, which is assigned Docket Nos. 514, 515, 516, and 518 EDA 2017, and is pending before this panel for decision.  We will dispose of Father's appeal in a separate Memorandum.  D.D.'s father, D.D., died in September of 2014.

adjudicated SC dependent and issued a stay away order against Father and also ruled that aggravated circumstances existed as to Mother and Father and that no efforts need be made to reunify SC with Father[.]  Thereafter, Father was found guilty on drug related offenses[4].

On January [  ], 2013, DD was born.  On September 11, 2014, a stay away order was issued against Father in reference to DD.  On September 21, 2014, DD's biological father, [D.D.], was murdered.

On January [  ], 2014, LC was born.[5]  On June 21, 2014, DHS made an unannounced visit to Mother's home and found Father at the home in violation of the stay away order.  At the adjudicatory hearing on March 12, 2015, LC was adjudicated dependent by the Honorable Jonathan Irvine and Father was ordered to stay away from LC.

On January 7, 2015, DD was adjudicated dependent by the Honorable Jonathan Irvine.  On June 29, 2015, CUA held a Single Case Plan ("SCP") meeting.  The objectives identified for Mother were (1) to participate in grief therapy; (2) to seek resources to apply for safe housing; (3) to comply with a Parental Capacity Evaluation ("PCE"); (4) to comply with the stay away order and (5) to visit the Children.

On December 2, 2015, Dr. William Russell, Ph.D., conducted a PCE for Mother.  Dr. Russell recommended the following: (1) Mother continue to attend weekly individual therapy with the goal to develop a clear understanding of the events leading to DHS involvement with her children; (2) compliance with mental health treatment; (3) to provide paternity information about Mother's other children, [Aa.] and [Au.]; (4) to maintain housing and employment; and (5) to increase visitation.

On May 25, 2016 CUA again revised the SCP for Mother, the objectives for Mother were (1) to participate in grief therapy; (2) to visit Children; (3) to be engaged in Child's (S.C.) mental health treatment; (4) to have no contact with Father; and (5) to establish a long term healthcare plan.  On November 17, 2016, DHS received as ("GPS") report alleging that Mother and Father were still in a relationship despite of a Protection from Abuse Order ("PFA") and a stay away order.  DHS learned that Father had been

incarcerated for the offense of Endangering the Welfare of a Child ([S.]) and served two years of incarceration[.]

_____

[2] Father was not the biological father of [S.] but the Children had the same biological mother, V.C. ("Mother"), Appellant.

[3] On October 26, 2010, DHS also learned that [S.] suffered from cardiac arrest.

[4] Father plead guilty to Intent to Manufacture/Deliver/Possession of a Controlled Substance pursuant to 35 [P.S.] § 780-113 on October 23[,] 2012.

[5] A paternity test determined that Father was the biological parent of L.C.

Trial Court Opinion ("Mother"), 4/4/17, at 2-6 (footnotes in original) (citations omitted).

On December 9, 2016, DHS filed petitions to terminate Mother and Father's parental rights to the Children and to change the Children's permanency goal to adoption. On January 9, 2017, the trial court held a hearing on the termination/goal change petitions. At the hearing, counsel for DHS, Mother and her counsel, Father and his counsel, and the Child Advocate, were present. DHS presented the testimony of Tieshima Brown, a case manager and social worker at the Community Umbrella Agency ("CUA"), Turning Points for Children; Courtney Ransom, a program analyst for DHS; Dr. Erica Williams, Psy.D., a psychologist who is the Director of Forensic Mental Health Services; Dr. William Russell, Ph.D., a forensic psychologist who works at Forensic Mental Health Services, who evaluated both Mother and Father; and Darren Hughes, a Truancy Intake Worker at DHS.

Both Mother and Father testified on their own behalf. Counsel for the parties, including child advocate, stipulated that the maternal grandfather, who was present, would testify that he attends all of Mother's unsupervised visits with the Children, and that Father had never been present at an unsupervised visit between Mother and the Children. *Id.* at 163. At the conclusion of the hearing the trial court terminated Father's parental rights as to S.C. and L.C. and held Mother's case under advisement.

On January 12, 2016, DHS filed a motion to reopen the termination/goal change hearing to supplement the record. The trial court issued a rule to show cause on January 13, 2017. Subsequently, on January 19, 2017, the trial court granted the motion to reopen the termination/goal change hearing to supplement the record with evidence that Mother permitted Father to violate the stay away order as to her children, Aa. and Au., who are not subjects of this appeal.

At the January 19, 2017 hearing, counsel for DHS, Mother and her counsel, and child advocate were present. However, Mother did not testify. Father was not present, nor was his counsel. Ms. Brown testified with regard to Father's contact with the Children and the other children of Mother, Aa. and Au., despite the stay away orders. N.T., 1/19/17, at 8. DHS also had an exhibit admitted that demonstrated that Father was having contact with the Children with Mother's knowledge and assistance. *Id.* at 8-16; DHS Ex. 1. At the conclusion of the hearing, based on the evidence at the hearing on January

9, 2017 and the testimony and additional evidence at the hearing on January 19, 2017, the trial court found that Mother had allowed Father to have access to her children, and ordered her parental rights to the Children terminated. *Id.* at 16-17. The trial court again changed the permanency review goal for the Children to adoption, and entered its decrees terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). *See* Trial Court Opinion (Mother), 4/4/17, at 6.

On February 13, 2017, Mother filed notices of appeal, along with concise statements of errors complained of on appeal. This Court consolidated the appeals on February 28, 2017.

In her brief on appeal, Mother raises the following issues:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, V.C.[,] pursuant to 23 Pa.C.S.A. sections 2511(a) (1), (2), (5) and (8) where evidence was presented at the trial that she completed most of her goals and was living with and caring for two of her other younger children[?]

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of Mother, V.C. pursuant to 23 Pa.C.S.A. sections [sic] 2511(b) where evidence was presented that established the [C]hildren had a close bond with their Mother and the [sic] had lived with their [m]other for part of their lives. Additionally, Mother consistently visited with her children for the entire time her children were in placement[?]

Mother's Brief, at 7.[2]

---

[2] Although Mother stated her issues somewhat differently in her concise statement, we find that she sufficiently preserved the issues for this Court's

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, [19], 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*
>
> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial

---

review. Mother has waived any challenge to the change in the Children's permanency goal to adoption under 42 Pa.C.S. § 6351 by failing to raise the issue in her concise statement and Statement of Questions Involved in her brief. *See Krebs v. United Refining Company of Pennsylvania*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the Statement of Questions Involved in his brief on appeal).

judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

***In re Adoption of S.P.***, 616 Pa. 309, 325-326, 47 A.3d 817, 826-827 (2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained, "[t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***Id.*** (*quoting **In re J.L.C.***, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Section 2511(a)(2) and (b) provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

The Supreme Court set forth our inquiry under section 2511(a)(2) as follows.

> As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

> This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

>> A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity. The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

> *In re Adoption of J.J.*, [511 Pa. 599, 605,] 515 A.2d 883, 891 (Pa. 1986) (*quoting **In re: William L.**,* [477 Pa. 322, 345,] 383 A.2d 1228, 1239 (Pa. 1978).

- 10 -

***In re Adoption of S.P.***, 616 Pa. at 326-327, 47 A.3d at 827.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. ***In re A.L.D.*** 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. ***Id.*** at 340.

With regard to section 2511(a)(2), Mother argues that the trial court erred when it concluded that her repeated and continued incapacity, abuse, neglect or refusal has caused the Children to be without essential parental care, control or subsistence necessary for their physical or mental well-being, and that she cannot or will not remedy the conditions and causes of the incapacity, abuse, neglect or refusal. Mother asserts that the evidence admitted at the hearing demonstrated that she has remedied the conditions that cause the Children to be placed in foster care, and that she is able to care for them. Mother's Brief, at 10.

> The trial court provided the following analysis:
>
> Minor Child SC was adjudicated dependent on July 31, 2012. Minor Child LC was adjudicated dependent on March 12, 2015. Minor Child DD was adjudicated dependent on January 7, 2015. The record demonstrated Mother's ongoing unwillingness to provide care or control for the Children; her inability or refusal to perform any parental duties and her failure to remedy the conditions that brought the Children into care. These facts provided the [c]ourt clear and convincing evidence that termination of Mother's parental rights would be in the best

interests of the Children resulting in the termination of Mother's parental rights pursuant to 23 Pa.C.S.A. §§2511(a)(1),(2),(5) and (8) and 23 Pa.C.S.A. § 2511(b).

At the termination hearings on January 9. 2017 and January 19, 2017, the CUA Representative's [Ms. Browns'] testimony demonstrated Mother had not met her SCP objectives nor [sic] her PCE recommendations. The CUA Representative testified that Mother had not come to terms with the death of her child [S.]. (N.T. January 9, 2017 Page 14). The CUA Representative testified that Mother allowed SC to have contact with Father in violation of Court Orders. (N.T. January 9, 2017 Page 19). The CUA Representative testified that that it was in the best interest of the Children that Mother's parental rights be terminated. (N.T. January 9, 2017 Page 20). The CUA Representative also testified that Mother could not provide adequate safety for [the] Children and that Mother did not express enough interest in SC's mental health treatment. (N.T. January 9, 2017 Page 21). The CUA Representative also testified that Mother had shown no interest in the Children's education or medical needs. Mother never sent cards or letters to the Children. (N.T. January 9, 2017 Pages 21-24). The CUA Representative also testified to photographs introduced which showed Father with Mother's other children, [Aa.] and [Au.] in violation of [c]ourt orders. This contradicted Mother's prior testimony that the Children had not visited Father (N.T. January 19, 2017 Pages 1-21).

* * *

Based upon [(the testimony of the CUA Representative] as well as the documents in evidence, this [c]ourt found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §§ 2511(a)(1)[,] (2)[,] (5)[,] (8)[,] as Mother had failed to remedy the conditions that brought the Children into care.

Trial Court Opinion (Mother), 4/4/17, at 7-10 (footnote omitted).

After a careful review of the record, we find that termination of Mother's parental rights to the Children was warranted pursuant to section 2511(a)(2), as Mother clearly lacks parental capacity, and the evidence showed that she will be unable to remedy that situation within a reasonable period of time, if

ever. As there is competent evidence in the record that supports the trial

court's findings and credibility determinations, we would find no abuse of the

trial court's discretion in terminating Mother's parental rights to the Children

under section 2511(a)(2). *In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47

A.3d 817, 826-27.

Next, this Court has stated that the focus in terminating parental rights

under section 2511(a) is on the parent, but it is on the child pursuant to

section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa.

Super 2008) (*en banc*). In reviewing the evidence in support of termination

under section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are
> met, a court "shall give primary consideration to the
> developmental, physical and emotional needs and welfare of the
> child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare
> of the child have been properly interpreted to include
> "[i]ntangibles such as love, comfort, security, and stability." *In
> re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [533
> Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that
> the determination of the child's "needs and welfare" requires
> consideration of the emotional bonds between the parent and
> child. The "utmost attention" should be paid to discerning the
> effect on the child of permanently severing the parental bond. *In
> re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 620 Pa. 602, 628-629, 71 A.3d 251, 267 (2013).

With regard to section 2511(b), the trial court stated the following:

> At the termination hearing, Dr. Erica Williams testified that
> termination of Mother's parental rights would not cause the
> Children irreparable harm. Dr. Williams findings were based upon
> a bonding evaluation conducted in 2015. (N.T. January 9, 2017
> Pages 25-28). At the termination hearing on January 9, 2017, Dr.
> Russell testified that the findings from the PCE showed Mother

- 13 -

minimized her role as to the death of [S.]. (N.T. January 9, 2017 Page 54). Dr. Russell testified that Mother should have no contact with Father. (N.T. January 9, 2017 Page 60). Dr. Russell also testified that he had deep concerns with Mother allowing the Children to visit Father. (N.T. January 9, 2017 Page 65). The [c]ourt concluded that the testimony of Mother demonstrated that Father and Mother violated this [c]ourt's Stay Away Order with impunity[.] (N.T January 9, 2017 Page 160).

The testimony of the CUA Representative [Ms. Brown] and Dr. Russell was deemed to be credible and accorded great weight.

* * *

The [c]ourt further concluded that the termination of the Mother's parental rights would be in the best interest of the Children pursuant to 23 Pa.C.S.A. § 2511(b) that termination of Mother's parental rights would not cause permanent harm to the Children.

**CONCLUSION**

After review of the facts and testimony presented during the Termination Hearing on January 9, 2017 and January 19, 2017 this [c]ourt found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S. [§] 2511(a)(1)[,] (2)[,] (5)[,] and (8). This court further found pursuant to 23 Pa. C.S. [§] 2511(b) that termination of the [m]other's parental rights would not have a detrimental effect on the Children and would be in the Children's best interest. For the foregoing reasons, this [c]ourt respectfully requests that the January 19, 2017 Order terminating Mother's parental rights to the Children be AFFIRMED.

Trial Court Opinion (Mother), 4/4/17, at 9-10.

After a careful review of the record, we find that termination of Mother's parental rights to the Children was warranted pursuant to section 2511(b), as the evidence showed that the Children's developmental, physical and emotional needs and welfare will best be met by the termination of Mother's parental rights. Further, the evidence showed that there is no bond between Mother and the Children that is worth preserving, in light of the fact that

Mother allows Father to have access to the Children, as well as to her other Children, Aa. and Au., despite the stay away orders issued that are to prevent Father from having access to her children.

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs

of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

As there is competent evidence in the record that supports the trial court's findings and credibility determinations, we find no abuse of the trial court's discretion in terminating Mother's parental rights to the Children under section 2511(b). *In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27.

We, therefore, affirm the trial court's decrees terminating Mother's parental rights to the Children, and the orders changing the Children's permanency goal to adoption.

Decrees and orders affirmed. Jurisdiction relinquished.

*Judgment Entered.*

_Joseph D. Seletyn, Esq._
*Prothonotary*


*Date:* _10/3/2017_